## JOHN D. DICKENSON *against* WILLIAM GILLILAND.

On the 16*th* of *August*, 1798, *Thomas Bay* and *Harmon Bay*, administrators of *John Bay*, deceased, recovered a judgment in this Court against *William Gilliland*, which was docketed on that day. Under a *fi. fa.* upon that judgment, *John D. Dickenson*, on the 3*d July*, 1821, purchased at sheriff's sale the lands hereinafter mentioned as sold upon the execution in this cause. The sale under the *Bay* judgment was at a bid of $1746. *Dickenson* afterwards received a deed upon that sale, dated *October* 4*th*, 1822.

On the 29*th October*, 1821, the Sheriff of *Clinton* county, under, and by virtue of a *fi. fa.* against *Gilliland*, in this cause, the judgment in which was docketed *May* 15*th*, 1798, sold to *Dickenson*, at a bid of $1593, (and executed and duly filed the proper certificate thereof) several tracts of land lying in that county, particularly described in the certificate, viz. two parcels for $1500, excepting thereout an acre conveyed by *Gilliland* to one *Prindle*, *July* 17*th*, 1810; another parcel of 50 acres, theretofore conveyed by *Gilliland* to and occupied by one *Brown*, was sold separately at $50; another parcel of 20 acres, conveyed by *Gilliland* to one *Keith*, *January* 1*st*, 1809, was also sold separately for $20; another tract of 100 acres was sold separately for $10; another of 50 acres for $10; and *Prindle*'s one acre, excepted from the two parcels first mentioned, was sold separately for $3.

*Gilliland* made no effort to redeem; but *Keith*, the owner of the 20 acres, redeemed the same by paying the $20 bid therefor, with 10 *per cent.* interest.

Where A obtained judgment against B, prior to the 9*th* of *April*, 1811; held, that the lien upon the lands of B ceased as against a subsequent judgment creditor, at the expiration of 10 years from that time. A sale under such a judgment, so late as the 3*d* of *July*, 1821, and sheriff's deed after the lapse of 15 months, will not do away the lien of a creditor whose judgment is intermediate the 9*th* of *April*, 1811, and the time of the sale, unless A's lien has been kept alive, by an execution actually issued and delivered to the sheriff, prior or to the 3*d* of *April*, 1821.

ALBANY,
October, 1823.

DICKENSON
v
GILLILAND.

On the 27*th* of *January*, 1819, *Barent* and *John R. Bleeck-er* recovered a judgment against *Gilliland*, in the Court of Common Pleas of *Clinton* county, for $50,99, which was docketed on the day last mentioned. On the 29*th January*, 1823, *Vinal Luce*, under a written power of attorney for that purpose from the *Bleeckers*, applied to the Sheriff to redeem pursuant to all the lands sold, except the 20 acres redeemed by *Keith*. the act, (*sess.* 44, *ch.* 238, *s.* 3) in which case it lies with him to show this affirmatively ; for it will not be intended, from the mere circumstance of a sale having been made, by virtue of an execution, on the judgment, on the 3*d July*, 1821, or any day intermediate that time and the 9*th* of *April* preceding

Whether the extension of the *lien* for three months, by the act of *April* 3*d*, 1821, is to be computed by calendar or lunar months ? *Quere.*

Where D obtained a judgment against G, which bound all his lands, and G afterwards sold and conveyed one parcel of his land to P and another parcel to K, and then B and B obtained another judgment against G, which bound the residue of his lands, and then G's lands were all sold by execution upon D's judgment, in separate parcels, and purchased by D, at distinct sums for each parcel, and the parcels sold by G to P and K, were set up separately, and bid off by D at distinct sums, *held*, that P and K might respectively redeem the parcels purchased by them of G, on paying the sum bid therefor, &c. and were not bound to pay the sum bid for all, or any other of the lands sold upon the execution ; for it is the same as if each of the parcels had been sold to separate purchasers.

*Held*, also, that B & B might, as judgment creditors, redeem according to the extent of the *lien* created by their judgment, viz on paying the amount bid, &c. for the lands, exclusive of those sold to P and K ; but that they had no right to redeem the lands sold by G to P and K, because their judgment was not a *lien* thereon. Yet the circumstance of paying the money bid, and taking a deed therefor of the sheriff, together with the other lands which they had a right to redeem, would not vitiate the deed as to the latter.

A junior judgment creditor, in order to redeem lands from a purchaser upon execution, according to the 3d section of the *act in addition to an act concerning judgments and executions*, must, within 15 months from the time of the sale, pay the amount bid by the purchaser, together with interest thereon, at 10 *per cent. per annum*, from the time of the sale, or he is not entitled to a deed ; nor can the sheriff dispense with the payment of that sum, or any part thereof ; and if he give a deed without receiving the money, it will be void, for he is a special agent, and must pursue his authority strictly.

If less than the 10 *per cent.* be paid to the sheriff, though the deficiency be paid to him by the judgment creditor after the 15 months, it will not vary the case ; for the payment of the money at 10 *per cent.* within the 15 months, is a condition precedent : nor does it make any difference, that both the sheriff and the creditor suppose 7 *per cent.* to be enough, by reason whereof payment is made at that rate, within the 15 months ; and after that time, and after the deed is given, on discovering the mistake, the deficiency is immediately paid.

It is a mistake of the *law*, against which the court cannot relieve.

Whether they would relieve, had it been a mere mistake of *fact*, as a misaddition ? *Quere.*

It seems they would.

Whether the 15 months, allowed by the statute to a junior judgment creditor, for redeeming, are to be computed as *calendar* or *lunar* months ? *Quere.*

The orders of this court, on summary application, are not *res judicata ;* but, on motion, it is their duty to direct and control their officers in their official acts ; and, accordingly, where one has purchased lands, upon execution, which are not redeemed within 15 months, they will, by a rule, order the sheriff to give him a deed of conveyance.

But they will not make any order touching a deed of the same lands from the sheriff to another, given under pretence that he had redeemed as a junior judgment creditor ; whereas, in fact, he had not redeemed, but had merely attempted to redeem, and by mistake had paid too small a sum : for the deed being void of itself, an order is unnecessary, and a rule directing the sheriff to convey to the purchaser answers him every requisite purpose.

Form of this rule.

It seems that an affidavit is inadmissible evidence, unless entitled in the cause in which the motion is made.

He offered to pay $1710,63, being the amount of *Dickenson's* bid, with only 7 *per cent.* interest thereon from the time of the last sale, and demanded a deed in the name and behalf of the *Bleeckers.* The Sheriff received the money, and executed such a deed as was demanded, drawn and prepared by *Luce*, of all the lands, except the 20 acres. Both the Sheriff and *Luce* stated in their affidavits that, at the time, they supposed the 7 *per cent.* to be enough; and did not know that 10 *per cent.* was required. The deed to the *Bleeckers* recited the certificate and the sum really paid by *Luce* and that the interest was 7 *per cent. per annum.* *Luce* swore that he did not advise the Sheriff as to the amount proper to be paid; he had made a calculation at 7 *per cent.* but was not a professional man, and did not know what the law required. He supposed 7 *per cent.* enough. That an Attorney at law was present, and acted as counsel of the Sheriff in relation to the execution of the deed ; he did not learn till the 21*st July*, 1823, that 10 *per cent.* was necessary. On finding his mistake, he did, as early as the 24*th* of *August* thereafter, go to the Sheriff and pay him $61, supposed to be the deficiency, in behalf of the *Bleeckers.* That the money first paid was enough to redeem all the parcels of land sold and unredeemed, except the one acre of *Prindle*, and the 50 acres occupied by *Brown.* The *Bleeckers* swore, that they instructed *Luce* to pay all the money required by law ; and the Sheriff stated, that by reason, as he believed, of his mistaking the law, *Luce* had not paid the requisite amount. On discovering that the 10 *per cent.* had not been paid, *Dickenson* demanded a deed of the Sheriff, which he refused to give.

*Dickenson* swore, that the second sale was procured by him, in order to confirm the title acquired under the first; and to secure a large demand due to him from *Gilliland*; but the affidavit in which he stated this fact, and which also stated the *Bay* judgment, and the sale under it, was entitled *Thomas Bay & Harmon Bay, administrators, &c.* v. *William Gilliland*; and it did not appear at what time the execution on this judgment had issued ; whether before or after it ceased to be a *lien* within the statutes. (*Sess.* 36, *ch.* 50, *s.* 1, 1 *R. L.* 500, *and sess.* 44, *ch.* 238.)

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

(b) *Sess.* 43,
*ch.* 184.

A motion was made (at the last term,) for a rule that the Sheriff of *Clinton* execute a deed to *Dickenson.*

*J. V. Henry,* for *Dickenson,* the plaintiff and purchaser. By the first section of the statute in addition to the act concerning judgments and executions, (b) the officer selling, instead of executing a deed, is to give the purchaser a certificate, describing the lands purchased, the sum paid, and when the purchaser will be entitled to his deed, unless the same shall be redeemed as provided by the act ; and the Sheriff is to file a duplicate of this certificate, within 10 days after the sale, with the Clerk of the county where the lands lie.   By the 2d section, it is made lawful for any defendant, his heirs, &c. or grantees, within one year from the sale, to redeem the lands sold, by paying to the purchaser, his executors, &c. or assignees, or to the officer who sold the same, the sum of money which may have been paid on the purchase, together with the interest thereon, *at the rate of* 10 *per centum per annum, from the time of such sale ; and on such payment being made as aforesaid, the said sale and the certificate thereupon granted, shall be null and void.*   The 3d section provides, that it shall also be lawful for any creditor of any defendant, whose lands shall have been sold, &c. who shall have a decree, &c. or a judgment, &c. against the defendant, which shall be a *lien* on his real estate, &c. within 15 months after such sale, in default of the defendant, to redeem the lands, &c. so sold *in the manner prescribed in the 2d section,* &c. and whenever any creditor shall redeem such lands or tenements as aforesaid, he shall be entitled to, and acquire *all the rights of the original purchaser thereof.* This section then provides for redemption by creditors holding subsequent successive *liens,* at 7 *per cent.*   The creditor who first comes to redeem, and pays the 10 *per cent.* is substituted for the original purchaser.   The 4th section provides, that if the lands sold, shall not be redeemed *as aforesaid,* either by the defendant or the creditor, within the 15 months, it shall be the duty of the officer who sold to complete the sale, by executing a deed of the premises to the purchaser.

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

*Dickenson's* first purchase being on the 3*d July*, 1821, the time of redemption upon this sale was limited to the 3*d* of *October*, 1822. On the 29*th* of *October*, the land was sold over again, as to which the period of redemption ended the 29*th January*, 1823, allowing the 15 months to be reckoned as calendar and not lunar months. It is not till the last period, the 29*th January*, that *Luce* made the offer to redeem, when more than 18 months from the first sale had elapsed. This was after *Dickenson's* right had vested under the first sale, and he was entitled to his deed within the terms of the statute. The judgment of the *Bleeckers*, therefore, had ceased to be a *lien*.

But as to the after sale, the *lien* of the *Bleecker* judgment was not only defeated by a title vesting under the first sale, but, as to a portion of this land, it never did and never could have attached. As long ago as *July* 17*th*, 1810, and before the *Bleeckers* obtained their judgment, one acre of these lands was sold by *Gilliland* to *Prindle*. This is included in the Sheriff's certificate to *Dickenson*, and in the deed given by the same Sheriff to the *Bleeckers*, and, as we contend, avoids the deed as to the whole. One has no right to redeem under a judgment, unless it be a *lien* on the whole land to be redeemed. The defendant must, by the second section, pay the entire debt. The third section requires the same thing of the creditor who comes on his default. It declares that he shall redeem *in the manner required by the 2d section*, and it is plain there can be no partial redemption, because the creditor acquires *all* the rights of the original purchaser. He cannot split these rights, and redeem more or less of the original purchase, at his pleasure. Here were 20 acres expressly excepted from the Sheriff's deed, which had been sold by *Gilliland* to *Keith* in 1809. *Bleeckers'* judgment was not a *lien* upon this parcel. *In the matter of Erwin* v. *Schriver*,(c) it is decided that there can be no redemption without a *lien*, which must be co-extensive with the purchase, and the offer to redeem must be all of the land bound by the judgment; that if only a *part* of the land sold is bound, *none* can be redeemed. The one acre was sold 9 years, and the 20 acres a still longer time, before the *Bleecker* judgment was obtained.

(c) 19 *John.* 379.

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

(d) 15 John.
119.

We also object that the offer was not in time. The computation of the 15 months was made as *calendar*, not *lunar* months ; whereas, according to *Loring* v. *Halling*,(d) it should have been the latter. It is said there, that " where the word *month* is used in a statute, without the addition of calendar or any other words, to show that the legislature intended *calendar* months, it is understood to mean a *lunar* month."

Another and a conclusive objection to the claim of the *Bleeckers* is, that on the 29*th* of *Jan.* 1823, when the deed to these gentlemen was executed, the principal sum, with 7 *per cent.* only, instead of 10 *per cent.* was paid. Of this fact, there is no doubt, and it is recited in the very deed under which they claim, besides being admitted by the supplemental payment. The Sheriff has not pursued his authority. Being a ministerial officer, and bound to pursue his authority strictly, omitting to do so renders the deed a nullity. He cannot thus divest our rights at his discretion. He was bound to give *Dickenson* the deed, notwithstanding the tender and the deed to the *Bleeckers*. For all purposes of right, the Court will consider this as done, from the 29*th* of *January*. The redemption, by paying the principal, with 10 *per cent.* is a condition precedent, prescribed by positive law, and cannot be dispensed with by a ministerial officer.

*Oakly*, contra. *Dickenson* could acquire no title to these premises, till the execution of a deed ; and the sale and certificate are therefore to be regarded as mere incipient steps. We have a deed, for which we have paid the full price ; and, although 7 *per cent.* only was, at first, paid, it was ultimately made up to 10 *per cent.* by the subsequent payment. *Dickenson* has all his money, at the very price which he has himself set upon the land ; he sustains no injury. Under these circumstances, he comes to the equity powers of this Court, to set aside our deed and for an order that a deed be executed to him.

The Court ought not to interfere in this summary mode, when the party has a more fit and competent tribunal in the Court of Chancery. This Court will not seek to enlarge its equitable powers, which are generally exercised upon

special motion, with very imperfect powers to elicit facts; leaving the party, at the same time, without the means of having the decision of the question reviewed on appeal. A Court of Chancery might, if necessary for the purposes of justice, decide the deed good in part and void in part. This is frequently done upon equitable principles, known and recognized in that Court. The whole ground might there be reviewed upon the equitable rights of the parties, as deducible, not only from the circumstances of the sales and redemption, but the value of the premises compared with their respective claims. The mistake of the Sheriff, being a publick officer, would be corrected there. Even the mistake of a private individual will be corrected, so as to work no prejudice, where there is no bad faith. A variety of instances, in which this power will be exercised by a Court of Equity, are collected in 1 *Maddock's Chancery*, 41 to 50. To afford every possible facility for redeeming, would moreover accord with the policy of the statute, which was intended to prevent a sacrifice of property, and holds out an inducement to bid a full and fair price, *if the purchaser means to retain the land itself, or the amount of his debt, if his object is to save that.* The first judgment creditor, coming in to redeem from the purchaser, holds both for the sum which he pays, and the *lien* which he has upon the lands sold. This is our situation. As judgment creditors, we are substituted for the original purchaser. The 4th section declares our deed *as valid and effectual in the law as if we had been the original purchaser.* The deed alone can transfer a title. Until this is executed, all the proceedings are *inchoate.*

If the Court have a discretion as to interfering on this motion, they will not do it unless a clear equitable case is made out; and they will then do no more than will place *Dickenson* in a situation to enforce his right. If these are executed, there is no need of this application.

*Dickenson's* rights under the *Bay* judgment, are first insisted on. Under the sale upon this judgment, he, by his own shewing, has a deed; and the Court will not interfere to enforce that sale against us. But this is said to destroy

DICKENSON
v.
GILLILAND.

the *lien* of our judgment and thus to defeat our right of re-demption upon the second sale. It is a sufficient answer to this ground of the motion, that the affidavit which sets up the *Bay* judgment, and the sale under it, is not *entitled* in this cause. Being entitled in the *Bay* suit, it cannot be read here. It is a universal rule that the affidavit must be entitled in the cause in which the motion is made. (*Executors of Phelps* v. *Hall*, 5 *John. Rep.* 367, and the cases there cited.)

But again : It does not appear, that any certificate of that sale was given or filed; though it took place subsequent to the act which requires this to be done. This is the reason, probably, why the second sale took place. Another objection is, that more than 10 years from the 9*th* day of *April*, 1811, had elapsed before the sale : so that by the statute (*sess.* 36, *ch.* 50, *s.* 1,(*e*) this judgment had ceased to be a *lien* upon the lands ; nor is it operative, so as to affect the *Bleecker lien*, which remains notwithstanding the sale. It does not appear when the execution issued, so as to enable the Court to see that it has any effect within the subsequent statute(*f*) extending this *lien*. *Dickenson*, then, must be deemed to have sold under a judgment too old to bind the land, and must abide our right to redeem from the sale upon the second. It is also very questionable at least, whether, if the *lien* was continued to the time of the sale, it would remain by force of the statute, which gives a certificate, up to the time of the deed. If the *lien* had then ceased, the deed from the Sheriff was void. The act (*sess.* 44, *ch.* 238, *s.* 3,) passed *April* 3*d*, 1821, extends the *lien* for 3 months from the time of passing that act, where the execution has actually issued. These are *lunar* months, within the rule cited by the gentleman, and they had expired at the time of this sale, which was on the 3*d July*, 1821, full three *calendar* months after the passage of the act. So that suppose the *lien* to be continued by a certificate, it was clearly, in this case, gone before the sale. There was no *lien* to be continued. But a sale and certificate, at most, transfers no title. It is merely evidence of an *inchoate* and conditional sale ; and until the deed is executed, the purchaser

(e) 1 *R. L.* 500.

(f) *Sess.* 44, *ch.* 238.

has no *lien* on the land. This was decided in *Bissell* v. *Payn,* (20 *John.* 3.) It is then no continuation of the *lien,* and in either point of view, the sale is void. But if valid, it was waived by the subsequent sale. Against our attempt to redeem from the second sale, it is objected, that we did not come in time ; and a computation by *lunar* months is insisted on in this case. We grant the rule, as laid down in *Loring* v. *Halling ;* but there is enough in the statute to shew, that *calendar* months are intended, according to the rule of that case. The defendant in the judgment is allowed to redeem in *one year,* which imports 12 *calendar* months. By another section, the creditor's right to redeem is extended to 15 months. The legislature never could have intended to compute this period, a part by calendar and part by lunar months ; so that when the whole act is taken together, it is plain that the computation intended is by calendar and not lunar months.

To the objection, that the payment was at 7, and not at 10 *per cent.* we answer, that the purchaser should not be allowed to avail himself of the Sheriff's mistake of the law, so as to defeat the right of the judgment creditor. Suppose the Sheriff had trusted to the creditor, without requiring the payment of any thing ; would the sale, for that reason, be void ? This case is not so strong as the one supposed. In *Jackson* v. *Sternberg,*(g) this Court held a Sheriff's deed, *per se,* evidence of title in the grantee ; and the Court intimate, that they will not allow it to be assailed except for fraud. If our deed is void, there is no need of this motion. So far as that is concerned, it can work no injury to *Dickenson.* If good, the Court have not the power, in this summary way, to divest the title. It is only for the purpose of seeing whether it stands in the way of a deed to *Dickenson,* that its validity can be questioned.

We have said, that the Sheriff might have waived the receipt of the money, and trusted the judgment creditor. That he may do so, is clear from analagous cases. The right of the Sheriff to give credit is recognized in *Denton et al.* v. *Livingston.*(h) This is a question between him and the plaintiff, or the original purchaser, and does not affect our

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

(g) 20 *John.* 49.

(h) 9 *John.* 96.

(i) *Jackson* v. *Bartlett,* 8 John. Rep. 361 *The Same* v. *Rosevelt,* 13 id. 97.
(j) id. and vid. *Carter* v *Simpson,* 7 John. Rep. 535.
(k) 1 R. L. 505, s. 13, 14.

right, as a purchaser, under the deed. It is well settled, that an irregularity committed by the Sheriff,(i) or a reversal of the judgment for error,(j) shall not affect the title acquired by a purchaser. The statute(k) provides that lands or goods shall not be sold without advertisement. Is not the ceremony of advertising as essential, and as much a condition precedent to the sale, as payment of the money in this case ? And yet was it ever heard of, that the title acquired upon the sale could be defeated for want of an advertisement ? In relation to lands there is an express provision, to this effect, in the statute, but it is merely in affirmance of the common law.

Our right to redeem, however, is questioned on the ground that our judgment is only a partial *lien*. Yet the certificate of the Sheriff is no evidence that the one acre had been conveyed by *Gilliland ;* or if so, it may have been re-conveyed. The certificate is, in this respect, a mere description of the property, and cannot safely be relied upon as determining the title. But we deny, that, because our *lien* or right of redemption does not extend to all the lands sold, we are, therefore, unable to redeem any part. *Keith* has redeemed his 20 acres. His right, it seems, is also to be determined by this motion ; for a deed to *Dickenson* will have the effect to divest his rights. The parties being thus situated, by the by, shews more strongly the propriety of reserving all these matters, perplexed as they are with a multiplicity of parties, as well as complicated questions of right, for the decision of a Court of Chancery. *Keith* redeemed as grantee ; as such he had a right, prior to that of any judgment creditor. Is he also to be denied the right of redeeming a part ? The reasoning which goes to defeat our right, goes all the length of destroying his because he did not redeem the whole. But it is plain, that the creditor may redeem partially, if the subject of redemption is in distinct parcels and can be severed. Here was a sale in different parcels, for different sums. It is the same as if there had been separate purchasers for each parcel. Upon any other principle, the object of the statute may be defeated in every case. The fair construction of the statute is, that the creditor may re-

deem to the extent of his *lien*, and the case cited of *Erwin*
v. *Schriver* is not inconsistent with this reasoning. In that
case, the claim was beyond the *lien*, and the *mandamus* was
properly denied on this ground. All that the Court say
about the right of the purchaser to object to receiving a part
of the purchase money, retaining a part of the land, is *ex-
tra judicial*. It is not law, but a mere expression of doubts
whether this can be, on account of the great inconvenience
of such a practice to the Sheriff and the purchaser. The
Sheriff must give distinct deeds, without the means of ascer-
taining the extent of the *lien;* the purchaser is made a ten-
ant in common against his consent ; and they very properly
turn the case over to Chancery on account of its doubt and
difficulty. There the sale was in common. Here it is in
severalty. The reasoning, there, from inconvenience, does
not apply ; for the certificate of the Sheriff sets forth enough
to enable us to sever in our redemption. Having a right,
then, to redeem in separate parcels, the sale being so, where
is the impropriety of applying the money paid to all these
parcels, except the one acre of *Prindle* and the 50 acres
sold to *Brown ?* Deducting these, as stated in the affidavit
of *Luce*, would leave sufficient to cover the amount bid for
the other parcels.

As to the objection, that payment at the time is a condi-
tion precedent, and that its omission cannot be relieved
against, this may, sometimes, be the case, as between private
persons ; but here is a mistake of a *publick officer*, which was
the reason of its not being made in due time ; and there
is a distinction, both in reason and authority, between the
two cases. In the first case, the purchaser buys at his per-
il and must look to the authority. In the latter case he is
not bound to do this.

*Henry*, in reply. By the first section of the statute, the
certificate of sale is made evidence of the facts contained
in it; and the deed of the *Bleeckers*, accepted by them, and
under which they claim, recites the very certificate, the
truth of which they are here attempting to impeach. They
have thus acquiesced in, and must be concluded by it. In
this certificate, the one acre and the twenty acres are men-

DICKENSON
v.
GILLILAND.

tioned as having been sold, the one to *Prindle*, and the other to *Keith*. This is conclusive upon the *Bleeckers*; or, at least, throws it upon them to rebut the facts, thus made out, by proof on their part, or to explain and show the land reconveyed, if such be the case. This single certificate engrosses all the land sold. It presents an entire sale to a single purchaser. We ask, then, can the creditor take a single parcel at his election—thus paying but a part of the money? No. He must redeem the whole. The act declares, that upon payment made, the sale and certificate shall be null and void. It contemplates a total redemption. The rights of the creditor are made co-extensive with those of the debtor or grantee. If the redemption be an entire thing, and the *lien* partial, the creditor cannot redeem at all; because he cannot thereby, in the language of the act, acquire *all the rights of the first purchaser.* Upon any other principle, how fares the rights of subsequent judgment creditors? The whole must be entire, throughout all the junior *liens.* There is not one word in the statute contemplating a partial redemption. There is to be but *one deed* of the premises. These remarks are, of course, confined to a single purchaser and a single certificate. It follows conclusively, from the decision in *Erwin* v. *Schriver*, that if the *lien* be partial, the right of redeeming cannot be exercised. Having no right to redeem the *Keith* portion, or the one acre, they could not redeem at all. The act contemplates full, entire, complete and successive substitution throughout.

The jurisdiction of this Court is unquestionable. An act of their officer is called up for review. On this subject they have plain powers. It is the common case of correcting the proceedings of an officer of the Court. Nor is there any need of going to Chancery for the sake of more ample proof; not one fact is in dispute.

Can this mistake, in the amount of the tender, be corrected either here or in Chancery? To entitle to relief against the non-performance of a condition precedent, it must, at least, be created by the act of the parties, and rest in compensation. The deed to the *Bleeckers* is absolutely void. Being so, the supplemental tender could not make it good. This

was not, as is supposed, the mere mistake of a publick officer. The Sheriff had no care as to the sum which should have been paid. It was the duty of the party to determine, at his peril, the amount of his tender; nor could the Sheriff give him credit. We had supposed it the received and settled doctrine, even in ordinary cases, that a Sheriff's sale on credit is void. Here are extraordinary powers given, and the only question is—has the money been paid, and in proper season? The deed recites the 7 *per cent.* and is given on that ground. Thus it appears, by a recital of the authority itself, that it has not been pursued. Besides, it will be found on calculation, that even the supplemental payment does not amount to the full sum due. The act of payment is not yet complete in this particular.

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

If, then, the deed is void, are we longer to be kept out of our title, under the pretence that it is valid? If we are to go to a Court of Equity, we ought to have our deed with us. The summary orders of this Court are not *res judicata,* and the party may still go to Chancery on the mistake.(l) It became the Sheriff's duty, after 15 months, to give us a deed. Having refused, we ask the Court to compel him to do this.

(l) *Simpson* v. *Hart,* 14 *John.* 63.

The validity of a Sheriff's deed notwithstanding irregularity or error, is bottomed on principles of publick policy. There is, in that case, no duty of the purchaser to inquire beyond the Sheriff's immediate authority, as it is presented by the judgment and execution. Not so here; the amount lies within his own knowledge; or he is bound, at his peril, as we before remarked, to ascertain it. The whole is his own act. The Sheriff is merely passive, till the money is paid and the time of redemption has expired. Then he is to give a deed—and not till then, is he to do any act beyond the receipt of the money, which the creditor offers or withholds at his pleasure.

It is said our certificate gives us no title; but is not the deed, after the 15 months, good by relation to the time of the sale? Again; we are told that each separate grantee of a separate parcel may redeem, and by consequence, one having a partial *lien,* should enjoy the same right. We deny the premises. Had the grantee wished to secure his

land, he should have purchased it at the Sheriff's sale. By neglecting this, he has disabled himself to redeem, or reclaim his land in any way ; and *Bleeckers'* offer should have been to redeem the 20 acres, as well as the other parcels. Not being so, it is void, for this reason.

The affidavit in relation to the *Bay* judgment, though not entitled in this cause, may be considered as referrable to the notice and the other papers attached to it. Becoming thus a part of those papers, which are properly entitled, it may be received as a ground of the motion.

The statute of the 3*d* of *April*, 1821, means *calendar*, not *lunar* time. Years are spoken of in the statute to which this is an amendment, as well as in the first section of the last statute. Where a statute first speaks of *calendar* time as *years*, and afterwards mentions months in connexion with this time, it means *calendar*, not *lunar* months. The *three months* are an extension of the *lien* beyond the 10 *years*. Thus the sale on the *Bay* judgment was regular as to time.

Nor let it be objected, that no execution issued before the 10 years had expired. We ask, is not this to be intended ? Our sale is regularly made by execution. Is it not, then, for the opposite party to shew that this execution did not issue before the *lien*, upon the judgment, expired ?

Nor is the second sale an *estoppel* against, or a waiver of the first. *Estoppels* are odious ; and the affidavit of *Dickenson* shews, that the second sale was perfectly consistent with the first, being made as a farther security of the title acquired by the first.

To recapitulate :

We move, 1. On the ground of partial redemption.

2. The whole sum due was not paid.

3. The Sheriff could not dispense with the payment of the whole or any part.

4. There has been no redemption upon the first sale.

5. Nor could there have been any under the second ; for the *lien* of the *Bleeckers* was gone by the first sale.

6. The Court have power to correct the mistakes, or the frauds of the Sheriff, he being one of their officers. This

is like the case where the Court interfered, and set aside a sale made by a Sheriff to his *daughter*, at a very inadequate price. That case shews that this Court may avoid a title improperly acquired at Sheriff's sale.

7. We have the greater equity, for the payment is, at best, but a partial consideration for the lands.

*Oakly*, here mentioned, that though the certificate was made evidence by the statute, it could be considered as proof of those facts, only, which the Sheriff had a right to insert. He has no right to set forth a conveyance by the defendant.

*Henry*, said this might be true, if he had produced the certificate ; but the *Bleeckers* had produced it, thereby making it evidence and adopting the whole.

WOODWORTH, J. in delivering the opinion of the Court, spoke nearly as follows : Any decision of ours, on this summary application, will not be so far conclusive upon the parties, as to prevent their drawing the same matters in question again in the more regular form of a suit, either in law or equity ; but we are called upon, and it is our duty, under the circumstances now presented, to give our opinion, as a guide to an officer of this Court in the discharge of a ministerial duty.

On the 3d of *July*, 1821, *Dickenson* purchased under the *Bay* judgment, and at the expiration of the 15 months, took his deed of conveyance upon that sale. On the 29th of *October*, in the same year, he sold again under an execution in this cause, and became the purchaser at $1593. It is denied, that the sale under the *Bay* judgment could have any effect. because that judgment had ceased to be a *lien* within the statute. (*Sess.* 36, *ch.* 50, *s.* 1, 1 *R. L.* 500.) Under the second sale, *Dickenson* received a certificate, and this sale is admitted on all hands to have been regular and valid ; both *Dickenson* and the *Bleeckers* referring themselves to it, as the foundation of the titles which they respectively claim. It appears by the certificate, that the lands in question consisted of six different tracts or parcels in the whole ;

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

but the principal part of them lay in two parcels, which sold together for $1500. On the last day of the 15 months from *Dickenson's* second sale, *B. & J. R. Bleecker*, as junior creditors, claiming under a judgment of the 27*th* of *January*, 1819, applied to the Sheriff for a deed, paying him the principal sum bid by *Dickenson*, with 7 *per cent*. only, which is admitted to be 3 *per cent*. short of the sum required by the statute. *Luce*, the agent of the *Bleeckers*, states, that he was ready, and had instructions to pay whatever sum was necessary to redeem. But it seems that both *Luce* and the Sheriff thought 7 *per cent*. enough. He paid that sum accordingly, in consideration whereof the deed was given. *Dickenson*, on discovering that the deed had been executed without the payment of the 10 *per cent*. demanded of the Sheriff a conveyance to himself, as the original purchaser. The Sheriff declined giving one. It is alleged that the *Bleeckers*, afterwards, made good the deficiency by a supplemental payment.

The principal question is, whether this payment was *substantially* a compliance with the statute.

It was much insisted on, in the argument, that the *Bleeckers* had no right to redeem, because their *lien* was gone by the sale on the *Bay* judgment. One answer given to this was, that the affidavit setting forth that sale, was wrongly entitled; and we incline to think the objection well taken; but if the affidavit is admissible, it does not shew, that *Gilliland's* title was divested by the sale. On the 9*th* of *April*, 1821, the *Bay* judgment ceased to be a *lien*. The statute (*sess*. 44, *ch*. 238, *s*. 3,) extends this *lien* three months from the 3*d* of *April*, 1821, in favour of those judgments, only, upon which executions had before been issued and actually delivered to the proper officer. *Non constat*, that execution had issued upon this judgment before that time. *Dickenson* should have shewn to us affirmatively, that the *lien* existed at the time of the sale. We cannot say, from any thing which appears, that it was continued; and there is, consequently, nothing in this objection to defeat the right of the *Bleeckers* to redeem.

Again : it was insisted that the *Bleeckers* could not redeem a part only of the premises sold. The application was to redeem all, except 20 acres, which *Keith* had previously redeemed as the grantee of *Gilliland.* It is said, that *Keith* had no right to redeem this parcel ; that it still remained subject to the certificate ; and the *Bleeckers'* offer to redeem, not reaching this parcel, was, therefore, irregular. This raises the question whether a single parcel can be redeemed ; or whether the subject of redemption is, at all events, and in all cases, the whole land sold. To show that it must be the whole, *Erwin* v. *Schriver* is relied upon : but that case is distinguishable. It was a sale of land owned by several tenants in common, upon a judgment against all the tenants ; and a junior judgment creditor of one of the tenants in common, came in to redeem the whole. The land was, moreover, sold in one entire parcel, for a single sum. This case is different. Here is a sale in separate parcels, for separate sums ; and we are clear, that it is competent to redeem any single parcel thus sold. The difficulty raised on the argument was, that the statute gives the redeeming creditor *all the rights of the original purchaser ;* and it was said, therefore, to contemplate a *total* redemption. But these words may well be limited to the *estate* in the parcel, and do not, necessarily, extend to *all the lands sold.* The words of the act may thus be satisfied, and the manifest inconvenience of a contrary construction avoided. Suppose the *Dickenson* judgment had been a *lien* on two farms ; at the Sheriff's sale, *A* buys one, and *B* the other ; each purchases at a separate sum ; no evil could arise from a separate redemption of either. Suppose them bound by the first judgment ; and that one of them is aliened before the second judgment is obtained ; when both are sold under the first judgment to separate purchasers ; is it to be tolerated, that the grantee of the debtor should be postponed to the second judgment creditor, and lose the preference, which the statute so plainly intends to give him, of a right to redeem within the year ? or would the second judgment creditor be deprived of the right to redeem the remaining farm, because his judgment was not a *lien* upon that which had been aliened ? We think not. The

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

DICKENSON
v
GILLILAND.

20 acres had been sold to *Keith*, and the one acre to *Prindle*; after the first, and before the second judgment: they were purchased by *Dickenson* separately. and at distinct sums for each. We think the grantees, respectively, had a right to redeem ; in default of doing so, these parcels would remain to *Dickenson*—neither of them being bound by the *Bleecker* judgment. It is the same as the case supposed, of a sale to different persons. In this view, the Sheriff had no power to include the one acre in the deed to the *Bleeckers ;* but such a circumstance would not have prevented its operation as to the residue.

The main question, then, and the one upon which we put our decision, is, can the redeeming creditor take the land without a strict compliance with the statute, by paying the 10 *per cent.* within the 15 months ? The 2d section says, that the defendant may, within one year from the sale, re-deem, by paying the sum of money which may have been paid on the purchase, *together with the interest thereon, at the rate of* 10 *per centum per annum,* from the time of the sale. The 3d section provides that the junior judgment creditor may redeem *in the manner prescribed in the second section.* The omission to pay the 10 *per cent.* must have arisen from a mistake of the law ; and this mistake was probably committed from the 10 *per cent.* not being reiterated in the 3d section. The *Bleeckers,* doubtless, intended to redeem, by paying the full sum required by the act : but, if this is not done, the statute is peremptory in its terms. It gives the deed to the first purchaser.

It was urged upon the argument, that the Sheriff might have received a part, and given credit for the residue ; or, indeed, that it was in his discretion to have dispensed with the payment of the money altogether, trusted the creditor, and assumed the debt himself. But there is nothing clearer, than that a special agent must conform to the authority with which he is clothed.(*m*) If he does not, his acts are void. The power of the Sheriff here is in very close analogy to that of receiving money of a defendant, who is arrested up-on a *ca. sa.* The Sheriff, or the plaintiff's attorney, may receive the money, and discharge the defendant. Yet the

(*m*) Vid. 1 *Liv-ermore on A-gency, ch.* 5, *s.* 2, *and the cases there cited.*

actual receipt of the money is a condition of the discharge, with wh:ch they cannot dispense.(n)  Without the actual receipt, the discharge is void, and the defendant may be again arrested, at the instance of the plaintiff, or the Sheriff may be sued for the escape.   Accordingly, where a Coroner held an execution against the Sheriff, and the former being indebted to the latter, in the full amount of the execution, assumed the debt and gave him a discharge, this was holden void, and the Sheriff was, notwithstanding, made liable for the debt.    The Coroner exceeded his special powers.    He had no discretion, but was bound to exact the money.   Actual payment was necessary, to warrant the discharge. These cases go upon the ground of publick policy, which will not suffer the officer to travel out of his duty.   Apply these principles to the present case.    The statute points out the officer's duty specifically ;  and is it possible to deny the purchaser his claim for a deed, under the circumstances of this case ?  The money was not paid within the time limited. We deem this a condition precedent.  Suppose this deed had been delivered as an *escrow*, to become absolute on the payment of the money by a given day, and there had been a default in the payment at the time, clearly the deed would be void ;  and yet that is not a stronger case against the purchaser, than the present one against the judgment creditor.  We cannot refuse the purchaser his deed, without disregarding all the well known principles which govern the conduct of special agents.

We were urged to overlook the one acre sold to *Prindle*, and also another parcel, of 50 acres, in the possession of *Brown*, and apply the payment to the remaining parcels, as to which it was said, enough was paid in the first instance: but we cannot arbitrarily apportion the payment in this manner.   It was general, and is void as to the whole.

We decline interfering with the deed of the *Bleeckers*.  If we are right, there is no need of interfering with it, for that deed is a nullity.  The Sheriff must convey to *Dickenson*,

ALBANY,
October, 1823.

DICKENSON
v.
GILLILAND.

(n) *Kellogg*-
v. *Gi·bert*, 10
*John.* 220.
*Cary & Mor-*
*gan* v. *Turner*,
6 *id.* 51.

SUTHERLAND, J. concurred. He added, that this is the case of a party asking to be relieved against a mistake of the law. Had it been a mere misaddition, or a mistake of fact, the Court might, perhaps, have interfered, and relieved against it; but being a plain mistake of the law, it is a case over which they have no control.(1)

SAVAGE, Ch. J. concurred.

The following order was thereupon entered:

John D. Dickenson
v.
William Gilliland.
Clinton Com. Pleas,
Barent Bleecker &
John R. Bleecker
v.,
William Gilliland.

*Nov.* 7, 1823. Ordered, that Ca= leb Luther, Sheriff of the county of Clinton, execute to John D. Dickenson a deed of the premises by him pur= chased, on the 29th of October, 1821 at a Sheriff's sale, under an execution issued on a judgment in favour of the said John D. Dickenson, against William Gilliland, mention- ed in the notice and papers filed in these causes, excepting 20

(1) This question was much considered in *Hunt* v. *Rousmanier,* (8 *Wheat.* 174.) *Marshall,* Ch. J. who delivered the opinion of the Court, (*id. p.* 215) says, "Although we do not find the naked principle, that re- lief may be granted on account of ignorance of law, asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of Equity."

In that case, a power of attorney had been executed, which the parties supposed would create a specifick *lien* on a vessel; and they intended that it should have that effect; but the instrument was so framed as to fail in answering the expected purpose; as to which, *Marshall,* Ch. J. says, " We find no case which we think precisely in point; and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a Court of Equity is incapable of aff. rding relief."

The cases cited by Mr. *Hunter,* in arguing that cause, as maintaining a contrary position, are, *Lyon* v. *Richmond,* 2 *John. Ch. Rep.* 51, 60 ; *Un- derhill* v. *Howard,* 10 *Ves.* 209, 228 ; *Irnham* v. *Child,* 1 *Bro. Ch. Cas.* 91 ; *Lord Portmore* v. *Morris,* 2 *Bro. Ch. Cas.* 219 ; *Marquis of Towns- end* v. *Sterngroom,* 6 *Ves.* 328, 382. The principle is certainly asserted, in several of these cases, that relief will *not* be granted, even in a Court of Equity, on account of ignorance of law. See, also, the opinion of *Kent,* Chancellor, in *Storrs* v. *Barker,* 6 *John. Ch. Rep.* 169.

acres, parcel of the premises bid off by the said *John D.*    ALBANY,
*Dickenson*, at the said sale, and subsequently redeemed by   October, 1823.
*A. Keith;* and that the residue of the application be denied. VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.