Chief Justice Watkins delivered the opinion of the Court. This was a bill in chancery, by the appellees, to foreclose a mortgage, executed to them by DeBaun and wife, to secure the payment of a debt due to them by DeBaun — to which the appellant was made a party defendant, upon the allegation that he claimed some title to the lands mortgaged, and he by his answer asserted title in himself superior to the mortgage by his purchase of the land under a prior judgment. The mortgage was executed, acknowledged and recorded on the 1st June, 1842, upon the west-half of section twenty-five, in township six south, range eight west — 320 acres, and the west-half of the north-east quarter of section fourteen, in township six south, range nine west — 80 acres, all in Jefferson county. On the 25th May, 1842, Louis Chittenden recovered judgment against DeBaun, iy an action of debt, in the circuit court of the United States for this district. Execution issued on this judgment on the 8th June, 1842, and was levied on various tracts of land in Pulaski county, which were advertised and sold- On the 24th March, 1843, an alias execution was' issued, and was returned levied on two tracts of land in Jefferson county, but not in time to advertise and sell, one of them being the southwest quarter of section twenty-five, hr township six south range eight west- — 160 acres, a part of one of the tracts embraced in the mortgage, upon which a venditioni exponas issued on the 26th of May, 1843, and- sale was made by Newton, as marshal, on the 9th October, 1843, at which the appellant, became the purchaser, and the two tracts last referred to were conveyed to him by Rector, as marshal, the successor of Newton, by deed- duly acknowledged and recorded. On the 11th December, 1843, a pluries execution- issued, and was levied on various tracts of land in Saline county, which were sold, and was also levied on the north-west quai’ter of section twenty-five, in township six south of range eight west—160 acres, and the north-east quarter of section fourteen, in township six south of range nine west, being the residue of the lands included in the mortgage, as to which the marshal returned that they were not sold at the instance of the plaintiff’s attorneys, in consequence of an alleged error in the advertisement; and on the 19th September, 1849, a venditioni issued for the sale of the two last mentioned tracts, which were sold under it, and purchased by the appellant on the 14th October, 1844, and conveyed to him by marshal’s deed on the 30th April, 1845, acknowledged and recorded. On the 24th June, 1846, Chittenden filed his motion, in the circuit court of the United States, to have the sale, made by Newton, marshal, under the ven. ex. on the 9th of October, 1843, set aside, and that the deed executed in pursuance of that sale, be canceled and vacated, because the sale under the ven. ex. was made by Newton, as marshal, after he had been removed from office, and that another ven. ex. be issued. Which motion was granted, vacating the sale and the deed made pursuant to it, and the ven. ex. issued on the 6th April, 1846, reciting the issuance of execution on the 24th March, 1843, the levy on the south-west quarter of section 25, &c., the return that it was unsold for want of time, &c., and requiring the same to be sold. Under this ven. ex. the south-west quarter of section twenty-five was sold on the 12th of October, 1846, and purchased by the appellant and conveyed to him by marshal’s deed on the 30th March, 1847, acknowledged and recorded. All of the sales under these successive executions failed to satisfy the judgment. On the final hearing, the court below decreed that as to the lands embraced in the mortgage, the judgment should be postponed to the mortgage, and a decree of foreclosure was made accordingly, from which the defendant, Trapnall, appealed. The case of the Trustees R. E. Bank vs. Watson et al., decided at January term, 1842, is a conclusive adjudication as to the priority of the judgment lien over that of the mortgage, the latter being junior in time; and the law must now be regarded as well settled that the lien of a judgment in the federal court is, by analogy to the State laws, co-extensive with the territorial jurisdiction of the court. See Byers and McDonald vs. Fowler et al., 7 Eng. 276, and cases there cited. But the appellees contend that the levy on land under the first execution, was a satisfaction of the judgment, and so postponed it to the mortgage; and the cases of Anderson v. Fowler, (3 Eng. 389,) and Anthony v. Humphries, (4 Eng. 176,) are relied upon as ¡decisive of this question, adhered to, as they are supposed to be, by the case of Whiting & Slark vs. Beebe, (7 Eng. 421.) Anderson vs. Fowler was a motion to recall a supersedeas, granted by a judge of this court, to an execution upon a judgment of allowance against an administrator in the probate court. The ground of the application for supersedeas was, that a former execution upon the same judgment had been issued, levied on lands of the administrator, and returned without sale by order of the plaintiff, and that without disposing of the former levy, thp plaintiff had caused an alias Ji. fa. to be issued under which personal property of the administrator had been seized in execution. Without entering into the reasons given by the court, Oldham, J., dissenting, the motion to recall the supersedeas was refused. Anthony vs. Humphries was a sci. fa. to revive a judgment, to which the defendant pleaded in bar of the action, a subsisting levy on lands of the defendant, of sufficient value to satisfy the judgment, whereby it was in law satisfied. Upon demurrer to this plea, the defendant in the court below had judgment, which was affirmed in this court, upon the authority of Anderson vs. Fowler, there adhered to as having decided the question, and it was thus disposed of without further consideration. In Whiting Slark v. Beebe, although the case of Anderson vs. Fowler is approved and confirmed, the court lay down the rule'to be that “a mere levy on sufficient personal property without any thingmore, never amounts to a satisfaction of the judgment. But so long as the property remains in legal custody, the other remedies of the creditor will be suspended. He cannot have a new execution against the person or propei’ty of the debtor, nor maintain an action on the judgment,” &c., and certainly while, as the court there say, this rule is settled by authority, it is as far as any court has gone, and comes up to the cases of the People vs. Hopson (1 Denio 574) and Green vs. Burke, (23 Wend. 501.) The difficulty would seem to be in the application of the rule under consideration. Without entering into a discussion of the difference between a, levy on land and a levy on goods, as insisted upon by the appellant, a mere levy on lands would not in any case work an absolute satisfaction of the judgment. By our statute, the judgment- deb-r tor has the right to select of his property what shall be levied on, and the sheriff is,bound to take it, if in his judgment sufficient; so that the debtor may direct the order in which he wishes his property levied on to be sold. These provisions of the statute are designed, like the so called satisfaction by levy, as a protection to the debtor, and being for his advantage, he may waive it. The intent, of the law is, that the creditor having a levy, presumed in the absence of any proof to the contrary to be sufficient, shall pot capriciously abandon it, and so harrass the debtor by a fur-: ther levy against his wijl. To allow this, where the levy is of personal property seized and taken out of the debtor’s possession, might be in a high degree oppressive, since, by being deprived of the use of the property, he is to that extent deprived of the means of paying the debt. Supposing a Jevy op. land to be the same in effect as a levy on goods, so that in either case the plaintiff would fairly exhaust it, the result of the decision in Anderson v. Fowler was right, though unnecessarily treated as a satisfaction. That case was nothing more than an application to supersede an alias fi. fa,, and though the relief would more appropriately have been sought in the court from whence the process issued fo quash or supersede it, as having been illegally or improvidently issued, the effect of the decision was merely to require the plaintiff to exhaust the previous levy by ven. ex. before he could resort to other property of the defendant. The difficulty of reconciling the case of Anthony v. Humphries with what the court understood to be law, consists in this: there; the levy on land was pleaded as a satisfaction and in bar* of the action, terms which ordinarily and in legal contemplation imply .an extinguishment of the judgment; — a bar to the right and not merely a suspension of the remedy. The proceeding there was a scire facias to revive a judgment and continue the lien, which, in Brown, Robb & Co. vs. Byrd, (5 Eng. 534,) was considered to be a suit where defendant had day in court and could plead, and bring error, yet it was, in the nature of process of the original action, not a new action, but a continuation of the old one! The judgment is not that the plaintiff recover, but that he have execution according to the form and effect of the original recovery. Where the plaintiff wishes to continue the lien of the judgment, or if either plaintiff or defendant does, so that a representative is brought in, the object of the scire facias is to enable the plaintiff to have execution effectually of his judgment, and to dispose, if need be, of the subsisting levy. But this object is defeated if the defendant be admitted to plead the levy in bar of the action. The law is understood by the court to be that a levy on personal property is a satisfaction, while the property remains in legal custody, but is not a satisfaction where the property is restored to the debtor, or in any manner gets back to his possession, or where the levy being exhausted by sale fails to produce satisfaction. In any such case, the plaintiff is entitled to have further execution; and where the levy has been exhausted by sale, it is a satisfaction pro tanto, and execution will be had for the residue. A levy on land is not an absolute satisfaction, and cannot be pleaded as such; but the plaintiff having a valid subsisting levy on land, may not abandon it against the will of the debtor, and tax him with the costs of further execution, and, on his application, it would be the duty of the court from whence the alias process is so irregularly issued, to quash or recall it. In the case now under consideration, the successive levies were exhausted by sale, the aggregate of the sales failing to produce satisfaction of the judgment. If there had been an actual satisfaction by payment or by sale of property not included in the mortgage, the appellees claiming under the mortgage would be entitled to the benefit of such satisfaction. But such would not be the effect of a mere levy on land. Even if the creditor, and not the debtor, had the election as to what property would be levied on, it would be inequitable to hold him bound by that election as a postponement of the lien of his judgment, if, from a mistaken notion of the value of the property, or any other cause, he failed to have a levy sufficient to produce actual satisfaction. While the levy remains undisposed of, his right to a further levy may be suspended, but the lien of the judgment continues unbroken. It would seem that the provisions of our statute, (title Judgments and Decrees, sec. 4 et seq.,) on that subject, are too plain to' be misconceived. They are as follows : “Judgments and decrees rendered in the circuit court shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held. Sec. 5 : Liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived as hereinafter provided. Sec. 6: A sale of lands under a junior judgment shall pass the title of the defendant subject to the lien of all prior judgments and decrees then in force. Sec. 7: The money arising from the sale,, shall be applied to the payment of the judgment under which it may have been made.” In the case of Rankin vs. Scott, (12 Wheat. R. 177,) C.J. Marshall, commenting on a statute of Missouri similar to ours, considered the statutory lien as binding as a mortgage, and has the same capacity to hold the land so long as the statute preserves-it in force. He said, “ The principle is believed to be universal-that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. The single circumstance of not proceeding-, on it until a subsequent lien has been obtained and carried into execution, has never been considered such an act.” In this case, so far as the mortgaged property is concerned, the judgment creditor can only be regarded as delaying to proceed against it. Surely the mortgagee cannot complain that the plaintiff in the judgment endeavored first to obtain satisfaction out of other property of the debtor before resorting to that which was mortgaged. At the outset, the only remedy the mortgagee could have was by injunction, upon the bill alleging that the debtor had other property bound by the general lien of the judgment, sufficient to satisfy it, to compel the creditor to sell the other property to which the lien of the mortgage did not extend, before resorting to the land bound by the mortgage; as in the case where there is a prior lien upon two funds, and a junior lien attaching to but one of them. Here the judgment creditor appears to have done all that the mortgagee could have required him to do. With the plain provisions of the statute, staring him in the face, the junior incumbrancer can do one of two things: he can either pay off and acquire the prior incumbrance, or he can sell, or foreclose and sell subject to it. These expressions are of course in general terms, and supposing the given case' to be free from fraud or collusion, which is not here alleged to exist. But another question arises in this case, which is supposed, by the appellant, to be decided by the case of Biscoe et al. vs. Watson et al., at January Term, 1852; that is, whether the levy before the execution of the three years, from the date of the judgment, will continue the lien beyond the three years. It was held, in that case, that such would be the effect of the levy. The facts of that case, so far as material to this question, were, that before the expiration of the lien the plaintiff sued out execution, which was levied on land, bound by the lien of the judgment, but the sale which took place on the first day of the return term of the execution, was after the expiration of the three' years, and when the lien of the judgment had ceased. In this case, one of the tracts included in the mortgage, being the south-west quarter of section 25, was levied upon and sold by vend, ex., on the 9th of October, 1843, and during the existence of the judgment lien. But on the 24th of June, 1846, and after the lien had expired, the sale made under that vend. ex. was set aside, the deed canceled, and an alias vend. ex. issued by order of the court: under this alias vend. ex. the tract in-question was again sold and purchased by the appellant. If this-sale is to be upheld, as conferring a title superior to that of the mortgage lien, it can only be because of the levy made during the continuance of the lien, and which remained undisposed of until after it had expired. We are not disposed to attach much importance to the fact that, after the original levy and sale of that tract under the first ven. ex , the plaintiff proceeded to levy upon and sell other lands, nor to the fact — in which this case differs from the Trustees vs. Watson—that here the second ven. ex.was issued after the lien had expired, and without any scire fa-cias having been issued to keep it alive: though the enquiry would arise, if the levy on land has the same efiect thus to continue the lien, how long will the plaintiff have, after the expiration of his judgment lien, to enforce a dormant levy by sale under execution, and make it relate back to and connect with the lien. The statute (title Judgments and Decrees, sec. 8) provides that “ The plaintiff or his legal representatives may, at any time before the expiration of the lien on any judgment-, sue out a scire-' facias to revive the same,” and after providing for the mode of issuing and serving the said scire facias, the effect of the revival is declared by section 13, as follows : “ If a- scire facias be sued-out before the termination of the lien of any judgment or decree,the lien of the judgment revived shall have relation-to the day on which the scire facias issued; but if the lien of any judgment or decree shall have expired before suing out the scire facias, the judgment of revival shall only be a lien from the time of the rendition of such judgment.” And so by subsequent sections the revival may be had against the representative's of a deceased defendant. These provisions of the statute were drawn in question in the case of Hubbard vs. Bolls, (2 Eng. 442,) and-were construed, according to their plain and obvious import, that a scire facias sued- out- after the expiration of the lien, entitled the plaintiff to a revival in lieu Of an action on the judgment, but the-lien only attached from the date of the judgment of revival, and? that where the scire facias is sued out before the expiration of the lien, the judgment of revival relates back to and connects with the original lien which continues unbroken. In the case of The Trustees vs. Watson, the court refer to the statute of New York, limiting the lien of a judgment to ten years, beyond which the lien should not be continued as connected with any subsequent revival, and concede that the difference in principle is unimportant, because, under our statute, if the scire fa-cias be not sued out before the expiration of the three years, the lien then ceases as effectually as if the law had so declared. Under the statute of New York, substantially the same as ours in giving effect to the lien of docketed judgments, only that it does not provide for reviving and continuing the lien, the courts of that State have held that a subsequent purchaser or encumbrancer is not affected by actual notice of a prior judgment, as he would be of a prior sale or encumbrance by deed or mortgage, and there can be no malafides (short of actual fraud) in acquiring any right to or lien upon land bound by a judgment. The statute gives the lien and limits it to a certain number of years, from the time it is docketed, and if not enforced within that time, there is an end of it, and the next oldest incumbrance in point of time is let in. That the judgment gives the lien, and the process of execution is the power or authority in the officer for enforcing it, and that the plaintiff who wishes to avoid the danger of junior in-cumbrances intervening, must not only issue execution, but must sell within the ten years and before the lien has expired. Little vs. Harray, 9 Wend. Rep. 157. Graff vs. Kipp, 1 Ed. Ch. 620. Tufts’ ad. vs. Tufts, 18 Wend. R. 622. Dickenson vs. Gilliland, 1 Cow. 481. Roe vs. Swart, 5 Cow. 294. Wood vs. Colvin, 5 Hill 228. Mower vs. Kep, 6 Paige R. 90. Crozer vs. Acer, 7 Paige R. 140. These cases were referred to in Trustees vs. Hubbard, but the opinion in that case extending the lien beyond the three years by virtue of the levy, proceeds upon this reasoning. That a levy on land is a satisfaction, as held in Anderson vs. Fowler, (3 Eng. 388,) and Whiting Slark vs. Beebe, (7 Eng. 421.) That being a satisfaction, a plaintiff having a levy cannot revive his judgment so as to continue the lien, as held in Anthony v. Humphries, (4 Eng. R. 183,) nor can he maintain any action upon the judgment. That the plaintiff though diligently endeavoring to enforce his lien by sale within the three years, might be prevented by accidental causes, such as injunctions, failure of the courts, &c., and would be utterly remediless unless the lien be extended by virtue of the levy, which will be allowed, under such circumstances, in order to give him die benefit of the judgment lien, where the execution is strictly prosecuted and followed up to its consummation by sale. The court say that any other construction of the statute would endanger the rights of creditors, while this construction does no injury to the owner, and the issuance and levy of executions are public and notorious acts, of which all persons are required to take notice, and will purchase such property at their peril. Now, it is incumbent on this court, and its first duty, if erroneous consequences may follow from any decision made by it, to arrest them before the mischief becomes irremedial. No such inference is to be drawn from the case of Whiting & Slark vs. Beebe, where the court, so far from holding a levy on land to be a satisfaction, say that a mere levy on personal property is not an absolute satisfaction. The cases of Anderson vs. Fowler and Anthony vs. Humphries, as reviewed and explained in the former part of this opinion, do not have the effect to prevent a plaintiff from having a revival of his judgment because of a subsisting levy on land. This obviates the whole difficulty, because it was in consequence of the construction put upon those decisions that the opinion in Trustees vs. Hubbard, was forced into an illogical train of reasoning. It is obviously the policy of our system of laws to make the title to land depend upon matter of record, and not upon any act in pais or resting in parol. The registry system is almost universal. Deeds, mortgages, mechanics’ liens, settlements of separate estate in the wife, and all incumbrances affecting the title to the land, are required to be recorded in the county where the land lies, else they will not avail as against innocent purchasers. So judgments and decrees are required to be condensed into a judgment docket, to -facilitate the examination of incumbrances and open to the inspection of all persons interested in the title to land. The only exceptions are, where the execution is levied on land to which the lien of the judgment does not extend, i.e. where the execution is sent to another county, or where the lien has been determined, i.e. expired without revival, and in such case the execution is the lien from the time it comes to the officer’s hands, just as it is on personal property, which is never bound by the lien of the judgment, (Rev. Stat., title Execution, sec. 27,) and would probably have to be governed by the same rules as apply to personal property; and clearly that the sale of land so situated would not be upheld by the lien of the judgment. But the case of Trustees vs. Watson, if adhered to in principle, must derange the registry system, and lead to controversies of a most perplexing character. As between the creditor and debtor, lien of the judgment is of no consequence: it is only material as between creditors who have conflicting liens. To follow out the reasoning in Trustees vs. Hubbard, if we admit the principle that the lien on land can be extended one day beyond the three '•years, there is no limit to its continuance, unless by analogy to the general statute of limitations. The court will be called on to decide the most vexed questions, as to what is strict diligence, and whether it has been pursued. Indeed, the pursuit of satisfaction would be a race of diligence, and the unfortunate debtor could make no appeal to his creditor for indulgence who could not rely implicitly upon the security of his prior lien. The example given of an accidental failure of the court, could not affect the question of diligence, because as to execution sales there is no failure of the court. So, where the plaintiff is restrained by injunction, he is supposed to- be amply protected by the injunction bond. We know that the levy of an execution on land is not a public and notorious act like the seizure of personal property, which at once arouses every one having an interest in it, and which, if adverse, is promptly arrested. Vexed questions as •to the fact of levy on land wguld arise, depending on parol proof, and the whole policy of the registry system, designed as a most comprehensive and beneficial statute against frauds, would be •disturbed. The partial evils arising from the exceptions, where the execution and not the judgment binds land, to which the lien does not extend or has been determined, must be met and considered as they arise. But in view of the whole statute, the opinion of the court is that the judgment lien on land ought to continue just so long as the law allows it, and no longer, else there will be ño adequate protection for subsequent incumbrancers or purchasers, who on principle might well claim to be innocent purchasers as against a levy, not required by law to be recorded. The plaintiff has, where his judgment is unsatisfied, a plain remedy, and that is to keep his lien alive by scire facias. After the revival, he can sell, and there is no lapse or break in his lien, as to which the scire facias operates like any other lis pendens; because it may happen in some cases where the sci. fa. issued out before, the judgment of revival is not entered until after the expiration of the three years — yet the lien is unbroken. In Whiting & Slark vs. Beebe, the title of Beebe turned on this: that the levy and sale to him, under the Gray and Bouton judgment, was after the three years had expired, though pending a sci. fa. to revive, sued out before the three years had expired, and upon which there was afterwards a judgment of revival, which related back, so that the lien of the original judgment continued and was in fact unbroken, and if there had been a sale made under it after the revival, the purchaser would have acquired a title paramount to Whiting & SI ark. But the court held that, after the expiration of the three years, and before the revival, the plaintiff, though he might issue execution and sell so as to divest the title of the defendant, yet could not have the benefit of his lien by such a sale. Because he might not pursue the scire fa-cias, or he might be defeated in the attempt to revive — and even if he did revive so as to get the benefit of his lien by relation back to his original judgment, yet the pendency of the scire fa-cias would not aid the sale in such case, since to give him all the benefit of this lis pendens under the sci. fa., that itself implies that the suit is undetermined between him and the defendant, who may defeat a recovery as by showing payment or release. It is upon such reasoning that the point so decided in Whiting & Slark vs. Beebe, is to be upheld, and it must be regarded as a conclusive adjudication of the question now before the court. In either case, the principle is, that the lien is a quality attached to the judgment, having no inherent quality to give it a preference over other claims, but is the creature of positive law, and the creditor who wishes to preserve his right to prior satisfaction, as against other creditors, must keep his lien on foot by complying with the provisions of the statute. Probably no question could come before this court fraught with more consequences of vast importance as regulating a law of property, than the one now under consideration. A forcible illustration of this is to be found in the course of decisions in Pennsylvania, a key to which is afforded by reference to the cases of The Commonwealth vs. McKisson, 13 Serg. & Rawle 144. Commonwealth vs. Alexander, 14 Serg. & Rawle 257. Hurst v. Hurst, 2 Wash. Ct. Ct. 69. Green vs. Allen, ib. 280. United States vs. Mechanics’ Bank, Gilpin 51. There is no need to prolong this opinion by a review of those cases. The state of the law in Pennsylvania bearing upon this question, will be found ably reviewed in the case of Thompson vs. Phillips, (1 Baldw. Ct. Ct. 246,) which fully upholds our construction of the law, that the lien of a judgment does not depend upon the levy. A statute like ours, plainly adhered to, would have prevented in that State a vast amount of litigation .and harrassing uncertainty as to a law of property extending through a period of over thirty years. It follows, from the opinion here expressed, that the lien of the mortgage, as to the south-west quarter of section 25, in township 6, south of range 8 west — 160 acres, is paramount to the title set up by the appellant: that the title of the appellant to the residue of the lands included in the mortgage must prevail over the lien of the mortgage, and as to them the bill to foreclose should be dismissed, and the complainants below are entitled to a decree of foreclosure as to the south-west quarter of section twenty-five, — each party paying1 one-half of the costs incurred in the circuit court. The appellant will recover costs in this court, and the cause is remanded to the court below, with instructions to enter a decree in accordance with this opinion.